■ In the Matter of CLANCY-CULLEN STORAGE CO., INC., Respondent, v BOARD OF ELECTIONS OF THE CITY OF NEW YORK et al., Appellants. In the Matter of GUARDIAN TRANSPORT CO., INC., Respondent, v BOARD OF ELECTIONS OF THE CITY OF NEW YORK et al., Appellants. — Order and judgment (one paper), Supreme Court, Bronx County (Kent, J.), entered on August 15, 1983, which consolidated two CPLR article 78 proceedings brought by the petitioners

Clancy-Cullen Storage Co., Inc. and Guardian Transport Co., and annulled the award by the respondent board of elections of a contract for cartage to Wagner Moving & Storage and remanded the matter to the board of elections to ascertain and verify whether respondent Eletto meets certain qualifications established by the board of elections, is unanimously reversed, on the law, without costs, and the petitions dismissed. Leave to appeal from the aforesaid order and judgment is hereby *sua sponte* granted. In order to provide for the transportation of voting machine equipment in the five boroughs of the City of New York for a period running from the date of the award to June 30, 1984, the respondent board of elections, in 1983, solicited bids from contractors. According to bid documents, no contractor would be awarded any contract covering more than half of one borough except for the Borough of Richmond. The bid specifications required the bidder to certify that he is duly licensed to do business in the City of New York and to agree to obtain all necessary permits required by law or regulation for the performance of the contract. The bidders were instructed to provide unit prices for the transport of the number of items estimated and a total price for the entire contract. The petitioners, Clancy-Cullen Storage Co., and Guardian Transport, Inc., along with Wagner Moving & Storage, Inc., and Joseph Eletto Transfer, Inc., and a number of other trucking companies submitted bids to the board of elections in respect to the proposed contract. After the bids were submitted by letters dated April 8, 1983, the board of elections directed each of the bidding companies to furnish proof that it had been in the trucking business five years, was licensed to do business in the City of New York, and further required that they furnish a certificate of convenience and necessity or a permit for contract carriers of property by motor vehicle issued by the New York State Commissioner of Transportation. The bidders were notified that failure to include these required documents would result in exclusion from the bidding. Wagner produced the other documents requested in the board of election's letter, but notified the board that it was exempt pursuant to section 160 (subd 3, par [a]) of the Transportation Law, which provides in substance that carriers that transport property for Federal, State or municipal governments were not required to have such a permit or a certificate of convenience and necessity. The respondent Eletto apparently did not have the requested permit for contract carriers of property issued by the New York State Commissioner of Transportation. However, it did submit proof that it had been in the trucking business for five years, was licensed by the City of New York and possessed a Public Service Commission permit to operate as a contract carrier of property by motor vehicle. The required documents were produced by the petitioners Clancy-Cullen and Guardian Transport, but as it developed, their bids were not the lowest bids. Wagner bid at $78,700 and Eletto at $81,525, while Clancy-Cullen's bid was $82,850 and Guardian Transport bid $102,165. The respondent board of elections thereafter awarded the contracts to Wagner and Eletto, finding that they were the low bidders and deeming them to have met the requirements of the bid documents. Article 6C of the bid documents provides that the board of elections may waive any informalities in the proposal for bid where such action is in the best interest of the city. In annulling the contract awarded to Wagner, Special Term inappropriately substituted its judgment for that of the administrative agency. This was error. "It is not the function of judicial review in an article 78 proceeding to weigh the facts and merits *de novo* and substitute its judgment for that of the body reviewed, but only to determine if the action sought to be reviewed can be supported on any reasonable basis". (*Matter of Kayfield Constr. Corp. v Morris,* 15 AD2d 373, 378.) Moreover, the requirement that bidders on the contract possess a certificate of convenience and necessity or a permit for contract carriers of property by motor vehicles from the

Commissioner of Transportation of the State of New York does not appear to have been a condition of the bid documents, but rather was set forth in a supplemental letter issued to the bidders by the president of the board of elections under letter dated April 8, 1983. The evidence before the board and before Special Term demonstrated that Wagner was exempted under the provisions of the State Transportation Law from the licensing requirements of section 160 (subd 3, par [a]). Thus there was no need for Wagner to comply with the request by the board of elections that such a license or a certificate of necessity be furnished. As to Eletto, the record indicates that it was in possession of a permit issued by the Public Service Commissioner in 1961 that thereafter was amended. Thus it would appear that Eletto met the qualifications demanded of bidders by the president's letter of April 8. Special Term thus erred in remanding to the board of elections the issue of whether Eletto possesses the requisite certificate or permit required by the board of elections' president's letter. These considerations aside for the moment, it is clear that the board of elections reserved to itself the right to "waive any informalities in the proposal for bids" and thus was equally empowered to waive any supplemental requirements imposed by any further communications from it to the bidders so long as that waiver had a rational basis and did not otherwise violate law. It is clear that a municipality may waive compliance with bid specifications if the noncompliance constitutes a mere irregularity and it is in the best interest of the municipality to grant the waiver. Here it appears clear that the economic benefit derived by the municipality in granting the contracts to the lowest bidder outweighs by far any technical defect, if indeed there is a defect, in the submissions by Wagner and Eletto. Concur — Sandler, J. P., Silverman, Bloom, Fein and Alexander, JJ.